Loretta S. PARKER, Plaintiff,

v.

Elizabeth DOLE, Secretary, United States Department of Transportation, and Donald D. Engen, Administrator, United States Federal Aviation Administration, Defendants.

Civ. A. No. C87–692A.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 31, 1987.

Dana E. McDonald, Atlanta, Ga., for plaintiff.

Myles Eric Eastwood and James R. Schulz, U.S. Atty., Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case involves a Title VII claim for sex discrimination by a federal employee of the Federal Aviation Administration, Department of Transportation. Simultaneous to filing her complaint, plaintiff filed a motion to set aside Local Rule 920–2, Internal Operating Procedures of the United States District Court for the Northern District of Georgia as violative of Title VII and Rule 53 of the Federal Rules of Civil Procedure. Rule 920–2 provides for the referral of cases brought in the Atlanta and Newnan divisions of the Northern District of Georgia pursuant to 42 U.S.C. § 2000e–2 (Title VII of the Civil Rights Act of 1964) to the full-time magistrates of this district. Defendants do not oppose plaintiff's motion.

## FACTS

Plaintiff brought this action April 10, 1987 seeking promotion, backpay and damages for alleged discrimination by her employer, the Federal Aviation Administra-

tion, based on sex. Simultaneous to filing her complaint plaintiff filed a motion to set aside Local Rule 920–2, Internal Operating Procedures which orders referral of Title VII cases in the Atlanta and Newnan Divisions to Magistrates. Plaintiff offers that objections to such referrals are to be made at or near the time of the referral.[1] Plaintiff stresses that she has no idea which judge and which magistrate might be assigned to the case, and therefore, is not "judge shopping." Plaintiff's Brief in Support at 2.

In an order dated April 17, 1986, the judges of the Northern District of Georgia made the specific finding of fact that within the Atlanta and Newnan Division of the Northern District of Georgia, the docket of the court does not permit the trial of actions brought pursuant to Title VII within 120 days of the issue being joined as required by 42 U.S.C. § 2000e–5(f). *See* statutory language *infra* at page 1566.

As a solution to this problem, the district judges of the Northern District through this April 17, 1986 order, amended Rule 920 of its Internal Operating Procedures to create Rule 920–2. The Rule provides:

920–2. Title VII Actions Brought in Atlanta and Newnan Divisions.

(a) Method of Assignment. All cases brought in the Atlanta and Newnan Divisions pursuant to 42 U.S.C. § 2000e–2 (Title VII of the Civil Rights Act of 1964) shall be referred at the time of filing to the full-time magistrates under the authority of 42 U.S.C. § 2000e–5(f)(5) who shall, acting as special masters, hear and decide said cases in their entirety. Class actions shall not be assigned under this rule. Where there are additional causes of action arising under federal or state law in a referred case, such action shall

also be referred to the magistrates, under Rule 53 of the *Federal Rules of Civil Procedure* if the parties do not consent to the trial of such issues by the magistrate pursuant to 28 U.S.C. § 636(c).

(b) Relief of Magistrates. The operation of this rule may be suspended at any time by order of the Chief Judge if it appears after consultation with the Magistrates Committee that:

(1) The docket of the courts permits the trial of such cases within 120 days after issue has been joined; and

(2) At any other time when the efficient disposition of other work of the court so requires.

An individual judge may withdraw any reference made under this rule at any time when in his discretion the issues are unique, novel, or such withdrawal would otherwise be in the public interest.

At the time a Title VII complaint is filed in an Atlanta or Newnan district court, the case is assigned to a particular district judge and referred to a magistrate. Rule 905 and 920, Internal Operating Procedures for the United States District Court for the Northern District of Georgia. The magistrate then proceeds to expedite disposition of the matter and the case proceeds to trial. After trial, the magistrate issues a special master's report for approval by the district judge assigned to the case.[2]

On the first anniversary of the order implementing Internal Operating Procedure 920–2, this court in the Local Rules Committee meeting of April 20, 1987 requested that the District Court Executive prepare statistics on the total number of Title VII cases assigned to all the judges of the relevant divisions during the calendar year 1985, the total number of 1985 cases disposed of during that year, and the aver-

---

**1.** *Spaulding v. University of Washington,* 740 F.2d 686 (9th Cir.1984) *cert. denied* 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984).

**2.** The procedure followed is described in Rule 53(e)(2) which states:

(2) *In Non-Jury Actions.* In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party

may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

age number of months to disposition. The year 1985 was the last year in which current Rule 920–2, Internal Operating Procedures was not in effect. The court also directed the District Court Executive to provide the same information by individual magistrate and cumulatively for the calendar year 1986, the first full year under the operation of Rule 920–2.

The District Court Executive responded providing the following statistical summaries:

**TABLE I**

Title VII Cases Assigned to and Closed By United States District Judges for the Northern District of Georgia During Calendar Year 1985

| No. Cases Filed | No. Cases Closed | Average No. Months to Disposition |
|---|---|---|
| 233 | 175 | 8.8 |

**TABLE II**

Title VII Cases Assigned to and Closed By United States Magistrates for the Northern District of Georgia During the Calendar Year 1986

| Magistrates | No. Cases Filed | No. Cases Closed | Average No. Months to Disposition |
|---|---|---|---|
| AL Chancey, Jr. | 29 | 6 | 3.8 |
| JM Feldman | 30 | 6 | 5.8 |
| JE Dougherty | 29 | 8 | 6.0 |
| WL Harper | 28 | 4 | 3.0 |
| JR Strother, Jr. | 27 | 5 | 5.2 |

$$\frac{23.8}{5} = 4.7 \text{ Average No. Months to Disposition}$$

The statistical summary demonstrates that the average number of months to disposition of Title VII cases in 1985 without the referral procedure was 8.8 months. With the operation of the referral procedure in 1986, the average number of months to disposition was nearly halved to 4.7 months.

**3.** Figures in this table are from the Administrative Office of the United States Courts (AO), Federal Court Management Statistics for 1985–86; Annual Report of the Director 1985–86; a compilation by the Clerk of the Court for the Northern District of the Monthly Reports of civil cases for the year ending June 1987; and the Movement Sheets prepared by the Clerk of the Court for 1985–87.

**4.** Rule 53(b) states:
(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in

The following chart demonstrates that the caseload in Atlanta and Newnan Divisions has not decreased significantly since the court's April 17, 1986 order.

CASES FILED IN ATLANTA & NEWNAN DIVISIONS [3]

| 1985–1986 | 1986–1987 |
|---|---|
| 848 Criminal | 641 Criminal |
| 2,926 Civil | 2,955 Civil |
| 3,774 Total | 3,596 Total |

## DISCUSSION

Plaintiff challenges the Northern District's internal operating procedure on three grounds. First, plaintiff contends that Rule 920–2 violates Rule 53 of the Federal Rules of Civil Procedure. Second, plaintiff contends the Rule 920–2 procedure is violative of 42 U.S.C. § 2000e–5(f)(4) and (5) of Title VII. Third, plaintiff contends that Rule 920–2 violates the provisions of the Magistrate's Act, 28 U.S.C. § 636.

### I. *Challenge to Rule 920–2 under Rule 53*

Plaintiff contends that Rule 920–2, Internal Operating Procedures is inconsistent with 42 U.S.C. § 2000e–5(f)(5) and Rule 53(b) of the Federal Rules of Civil Procedure in that across-the-board referral in the Atlanta and Newnan divisions violates the Rule 53(b) requirement that referral be made "only upon a showing that some exceptional condition requires it." [4] Section 2000e–5(f)(5) provides:

(5) It shall be the duty of the judge designated pursuant to this subsection to

matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it. Upon the consent of the parties, a magistrate may be designated to serve as a special master without regard to the provisions of this subdivision.
Plaintiff also argues that because Rule 920–2, Internal Operating Procedure violates Rule 53(b) that it also violates Rule 83 which governs the promulgation of local rules by district courts. This argument, however, is meritless because Rule 920–2 is not a local rule but rather an internal operating procedure dealing with referral of cases.

assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to Rule 53 of the Federal Rules of Civil Procedure.

42 U.S.C. § 2000e–5(f)(5).

In essence, plaintiff argues that because § 2000e–5(f)(5) contemplates referral of Title VII cases to a special master under Rule 53, and because Rule 53(b) provides that referrals to special masters under its authority are to be "the exception and not the rule," the "blanket" referral of Title VII cases authorized under Rule 1920–2 of the Northern District of Georgia at issue here violates § 2000e–5(f)(5) and Rule 53.

The Ninth Circuit in considering the validity of Rule 53(b) in the § 2000e–5(f)(5) context rejected this literal interpretation as contrary to the intent of Congress that the stringency of Rule 53(b) be "relaxed" in the Title VII context. *White v. General Services Administration*, 652 F.2d 913 (9th Cir.1981); *Spaulding v. University of Washington*, 740 F.2d 686, 695 (9th Cir. 1984), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984) (reaffirming the holding in *White*). The court in *White* looked to the legislative history of the Equal Employment Opportunity Act of 1972 and discovered that Congress, as a part of a compromise which allowed the current enforcement provisions of the Act to be passed, designated that Rule 53(b)'s usual stringent requirements be "relaxed." *White* at 915–16; 118 Cong.Rec. —— (daily ed. February 22, 1972), *reprinted in* Legislative History of the Equal Employment Opportunity Act of 1972 at 1730–31 (also available on C.I.S. Index).

Generally, resort to legislative history is unnecessary where there is no ambiguity in the plain meaning of the statute. *Scarborough v. Office of Personnel Management*, 723 F.2d 801, 816–17 (11th Cir.1984). How-ever here § 2000e–5(f)(5) explicitly mandates that the court "cause the case to be in every way expedited." 42 U.S.C. § 2000e–5(f)(5).[5] If after such expedited treatment, the judge cannot schedule the case for trial within 120 days of the issue being joined, the judge may appoint a special master pursuant to Rule 53. *Id.* If plaintiff is correct and the severe restrictions of Rule 53(b) apply, a Title VII case which the court has already determined cannot be heard within 120 days *and* which does not meet the usual stringent Rule 53(b) criteria would then be stuck in limbo until the district court could hear the case. This result is plainly at odds with the intent of Congress clearly expressed throughout the language of the statute to expedite resolution of these claims. The use of the word "may" in § 2000e–5(f)(5) connotes some discretion in referral by the court. *See* page 8 *supra*. But, presumably where the delay in the district court would be indefinite, given the stress in the statute placed on expediency, referral to a master is preferred. *See* note 5 *supra*. Thus, resort to the legislative history is required to clarify the seemingly anomalous result that a district court not be able to reach a matter, for example because of Speedy Trial Act conflicts, but also be unable to refer the case to a master because of the restrictiveness of Rule 53(b).

During the senate floor debate, the entire enforcement mechanism of the Act was changed from the commission-based enforcement recommended by the Senate Labor Committee to federal court enforcement through the so-called Dominick amendment. Senator Javits, the Bill's sponsor, introduced amendment 909 to S. 2515. That amendment as adopted became the current language of § 2000e–5(f)(5) providing for referral to a special master by the district court. Due to concerns of delay caused by the backlog of cases in the federal courts, it clearly appears from the floor debate that a court-based enforcement mechanism would not have been ac-

---

5. This language emphasizing congressional intent to expedite treatment of Title VII discrimination claims also appears in 42 U.S.C. § 2000e–5(f)(2). The short timetable for procedures re-solving such claims throughout § 2000e–5 underscores the Act's emphasis on speed in disposition as a major priority of Congress. (*See e.g.*, 2000e–5(c), (e), (f)(1).

ceptable to the Senate without provision for referral to special master with speed and ease. Legislative History at 1675–76; 1730–31. *See* discussion *infra* for a fuller recitation of this crucial change in enforcement procedures.

In support of the amendment in the floor debate, Senator Javits stated "[t]he normal rule as to the ability of the court to appoint a master if it wishes under Rule 53 is quite stringent—the case must be truly exceptional to qualify. All this amendment does is relax that stringency in the area of Title VII cases, where justice delayed is very often justice denied." Legislative History at 1730–31.

The local rule at issue in *White supra* stated that referral to the magistrates was to be "without regard to the provisions of Rule 53(b)." *White* at 915. The Ninth Circuit in upholding the rule which allowed referral upon determination that the case could not be scheduled for trial within 120 days after the issue joined, read this language to mean that referral was not subject to the portions of Rule 53(b) that severely limit the use of a master. *White* at 915. Likewise, this court believes that Congress intended that the stringency of Rule 53(b) not defeat the Act's goal of expediting cases. This court feels it is unnecessary to obliterate Rule 53(b) in order to harmonize its requirements with § 2000e–5(f)(5) and the internal operating procedure at issue in this case.[6] Regardless, the legislative history makes clear that the stringency of Rule 53(b) should be *relaxed* in the Title VII context. As the Ninth Circuit observed, there would have been little reason for the choice of the judicial enforcement mechanism had Congress merely wished to confine referrals to the extremely limited number of instances contemplated by Rule 53(b). *White* at 915. This court finds that the referral of Title VII cases filed in the Atlanta and Newnan divisions of the Northern District of Georgia to magistrates designated as special masters pursuant to Rule 920–2 does not violate Rule 53 as embodied in § 2000e–5(f)(5).

## II. *Challenge To Rule 920–2, Internal Operating Procedure Under Section 2000e–5(f)(4) and (5)*

### A. *Statutory Analysis*

■ Plaintiff seemingly challenges Rule 920–2 as inconsistent with the wording of § 2000e–5(f)(4) and (5) of the 1972 Act itself. A step-by-step analysis of the procedures adopted in the Act compared with the procedures followed pursuant to Rule 920–2 is helpful in determining the Rule's compliance with that statute.

Paragraph 5(f)(4) of the Act states that it shall be the duty of the Chief Judge of the district to designate a judge in the district to hear the Title VII case. § 2000e–5(f)(4). In the Northern District the court, out of an interest in neutrality and court efficiency, has by order delegated the ministerial duty of the assignment of all cases to the Clerk of the Court who executes this duty by designating a district judge to hear the case by random numerical rotation. The Clerk has no discretion in assignment. Rule 905, Internal Operating Procedures; *see also* C. Seron The Roles of Magistrates: Nine Case Studies at 49 (Federal Judicial Center 1985) (describing the Northern District of Georgia's change to an individual calendar system). Under the general assignment procedures of this court and Rule 920, every Title VII action is *assigned* to a district judge immediately upon the filing of the complaint. All cases brought in the Atlanta and Newnan Divisions are *referred* to a full-time magistrate at that time. The Chief Judge of the district signed the order approving these assignment procedures. Order September 1, 1984. In regard to Rule 920–2, the Chief Judge along with each judge in the district signed the order containing the finding of fact that the judges assigned Title VII cases from Atlanta and Newnan divisions were not able to schedule trials within the 120 day period.

---

6. An equally acceptable analysis would be that the "exceptional circumstances" requirement of Rule 53(b) is met when a Title VII case cannot be scheduled for trial within 120 days of the issue being joined.

Order April 17, 1986. The Chief Judge also voted in favor of adoption of Rule 920–2.

Moreover, under Rule 920–2, the Chief Judge may suspend the operation of the rule if (1) the docket permits trial within 120 days after the issue has been joined, and (2) at any other time when the efficient disposition of other work of the court so requires. Rule 920–2(b)(1) and (2). Thus, the Chief Judge retains responsibility over assignment of Title VII cases to the district judges in compliance with § 2000e–5(f)(4) and every such case is properly assigned to a district judge at the time the complaint is filed.[7]

Section 2000e–5(f)(5) stresses that the case should be scheduled for hearing "at the earliest practicable date" and should be "in every way expedited." § 2000e–5(f)(5). If this cannot be accomplished within 120 days after the issue has been joined, a master may be appointed pursuant to Rule 53. *Id.* Upon learning that the 120 day mandate was not being met in spite of the expedited treatment Title VII cases had been given by the district judges of the Northern District, the judges entered a factual finding to that effect and promulgated Rule 920–2 to correct the problem. Pursuant to Rule 920–2, Title VII cases are currently referred to a magistrate consistent with the still-valid finding that the court docket currently does not permit the trial of Title VII cases within 120 days after the issue has been joined. Rule 920–2(b)(1).

The court, therefore, feels that its operating procedure complies with § 2000e–5(f)(4) and (5). However, plaintiff argues that the court should reach the opposite conclusion. The court finds ambiguity in the statute not only in the difference between plaintiff's reading of the § 2000e–5(f) and that of the court, but also in refer-ence to the enumerated powers of the magistrates under the Magistrates Act, 28 U.S.C. § 636.[8] *See* Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term,* 68 Iowa L.Rev. 195 (1983); *see also* Carro and Braun, *Use of Legislative Histories by the United States Supreme Court: A Statistical Analysis,* 22 Jurimetrics J. 294 (1982). The Magistrates Act § 636(b)(1) provides:

(b)(1) *Notwithstanding any provision of law to the contrary —*

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance ·of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for post trial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

28 U.S.C. § 636(b)(1) (emphasis added).

Thus, under § 636(b)(1)(A) or (B) any pretrial motion or discovery matter may be referred to the magistrate for either hear-

---

**7.** The second sentence in § 2000e–5(f)(4) provides that "[i]n the event that no judge in the district is available to hear and determine the case, the chief judge of the district ... shall certify this fact to the chief judge of the circuit ... who shall then designate a district or circuit judge of the circuit to hear and determine the case." This clause is inapplicable to Rule 920–2, however, because no factual finding has been made that "no judge in the district is available to hear and determine the case." The factual finding of the court in its joint April 17, 1986 order relates only to the Atlanta and Newnan divisions of the district.

**8.** A variant of the current Act went into effect in 1972, Pub.L. 92–239, 86 Stat. 47 (1972), although Congress substantially revised magistrate's duties in 1976. Magistrates Act of 1976, Pub.L. 94–577, 90 Stat. 2729 (1976).

ing and determination by the magistrate, or hearing and submission to the district judge of proposed findings of fact and recommendations for disposition. Nowhere in the Magistrates Act or in the Legislative History to the Act are Title VII cases exempted from this procedure. S.Rep. No. 74, 96th Cong., 1st Sess. 4, *reprinted in* 1979 U.S. Code Cong. & Ad. News 1469–1491.

From the authority of the Magistrates Act it appears this court can immediately refer any or all Title VII pretrial matters to the magistrates for appropriate treatment under § 636(b)(1)(A) or (B). Then presumably the magistrate would refer the case back to the district judge for trial. Upon a finding that the trial cannot be scheduled within the 120 day time frame of § 2000e–5(f)(5), the district judge would then refer the case back to the magistrate under Rule 53 for trial. This creates at least a superficial conflict with plaintiff's "literal" reading of § 2000e–5(f)(5) that "[i]t shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited ..." and that "[if the] district judge has not scheduled the case for trial within one hundred and twenty days after [the] issue has been joined, that judge may appoint a master pursuant to Rule 53 of the Federal Rules of Civil Procedure." 42 U.S.C. § 2000e–5(f)(5). Following the logic of plaintiff's position, paragraph 5(f)(5) arguably implies that pretrial matters may not be referred to a magistrate until the 120 day limit has nearly expired.

Resort to the legislative history of § 2000e–5(f)(5) and the Magistrates Act is necessary to clarify the ambiguity and possibly harmonize the potential conflict between these statutes. *See Shearson/American Express, Inc. v. McMahon,* — U.S. ——, ——, 107 S.Ct. 2332, 2339–43, 96 L.Ed.2d 185 (1987) (utilizing legislative history to reconcile the conflicts in interpretation between the Federal Arbitration Act and the Securities Exchange Act of 1934), and at 4762 (utilizing legislative history to reconcile interpretive conflicts between the Arbitration Act and the Civil RICO Statute); *see generally* Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term,* 68 Iowa L.Rev. 195 (1983).

## B. *Legislative History*

The type of forum appropriate for enforcement of violations of Title VII was hotly debated in both houses of Congress. The Labor Committee both of the Senate and of the House reported bills out of committee containing provisions for administrative cease-and-desist procedures, not direct federal court enforcement. H.R. Rep. No. 92–238, 92nd Cong., 2nd Sess. 1–69 (1972), U.S.Code Cong. & Admin.News 1972, p. 2137, *reprinted in* Legislative History of the Equal Employment Opportunity Act of 1972 at 61–131 (also available in C.I.S. Index); S.Rep. No. 92–415, 92nd Cong., 2nd Sess. 1–70 (1972), *reprinted in* Legislative History of the Equal Employment Opportunity Act of 1972 at 410–497 (also available in C.I.S. Index).

In the Senate floor debates Senator Javits, the bill's sponsor, desired that the Committee recommendation of enforcement by the Equal Employment Opportunity Commission be approved. 118 Cong.Rec. —— (daily ed. Feb. 22, 1972), *reprinted in* Legislative History of the Equal Employment Opportunity Act of 1972 at 1529 (also available in C.I.S. Index). However, the Nixon Administration through members of Congress supported enforcement by the federal courts. Legislative History at 1529. Senator Dominick introduced an amendment on the Senate floor to that end, vesting jurisdiction over Title VII complaints in the district courts. Legislative History at 1531. Thus, two competing enforcement mechanisms were before the full Senate for approval. Senator Javits and supporters of administrative enforcement complained that the extreme backlog of cases in the federal district courts failed to offer expedient redress for victims of discrimination. *Id.* at 1529.

Senator Dominick in opposing administrative enforcement stressed that the finding of an administrative commission did not have the clout of a federal court order and

that administrative enforcement would present separation of powers problems. *Id.* at 677. To remedy the problem of delay caused by clogged court calendars, supporters of the administrative enforcement option proposed a compromise that if cases were backlogged in federal court, the EEOC could be used as a "special master" to expedite hearing of the complaints. *Id.* at 1529. Senator Javits stressed expediency in resolution of the dispute as the primary goal of enforcement. *Id.* at 800–806. In response to the Dominick Amendment, after extended discussion about the extreme backlog of cases in the federal courts (*see* Legislative History at 1527–29) Senator Javits along with Senator Williams proposed an amendment setting a time limit within which a court hearing should be set. In support Senator Javits stated, "... you could write our amendment very unelaborately by simply including a proviso that in all such cases there shall be a referee or special master and it shall be the commission, unless there is some good reason to the contrary, and you can eliminate the rest of it and get down to the nub of what we are trying to accomplish." *Id.* at 1529.

It is clear from these remarks that the appointment of a master was seen as a way to ameliorate the effect of the backlog in the courts. Senator Cooper rose in opposition to the EEOC as special master because of his concern that proceedings before the Commission would not satisfy the requirements of due process. *Id.* at 1533. He proposed that special masters be appointed by the district courts as contemplated by Rule 53, Federal Rules of Civil Procedure. *Id.*

Senator Javits initially disagreed with the idea of appointing any special master other than the Commission because he questioned whether a special master would have the requisite expertise to decide such matters. *Id.* at 1532. Javits agreed, however, that such a master would alleviate the problem of delay. *Id.* at 1532. Javits' amendment to the bill providing for appointment of special masters made referral to a special master mandatory if the case was not set for trial within 120 days. *Id.* at 1676.

After consultation with Senator Dominick and Senator Cooper, Senator Javits introduced amendment 909 to S. 2515 which made referrals by district courts to special masters discretionary. *Id.* at 1731. Additionally, Senator Javits indicated that although the referral to special masters was to be done pursuant to Rule 53 which requires exceptional circumstances as prerequisite for referral, for the purposes of Title VII cases this requirement should be relaxed. *Id.* at 1731. In support of his amendment, Senator Javits advocated giving the district courts flexibility in the appointment of masters, stressing that "justice delayed is very often justice denied." *Id.* at 1731.

In summarizing the meaning of Amendment 909 just prior to the full Senate approving it as the final language now found in § 2000e–5(f)(5), the following colloquy ensued between the two senators who had worked out the final compromise on the choice of enforcement mechanism:

Mr. Dominick: I discussed this amendment in its original form with the Senator from New York [Javits] and suggested that rather than to strike what trial judges are supposed to do, we ought to leave it discretionary with judges because of the different situations that might arise in different jurisdictions.

As I understand it, the amendment language now is simply designed to remind the judge that Congress intends that employment discrimination cases should be expedited so if the judge thinks it wise, he can turn the case over to a master. This language simply highlights Congressional concern without trying to mandate what the judge does.

Mr. Javits: The Senator is exactly correct.

*Id.* at 1731.

As demonstrated in the foregoing recitation, the goals of Congress in hammering out the compromise on the appropriate enforcement mechanisms were that discrimination cases receive expeditious treatment, sufficient guarantees of due process and substantive expertise by the decisionmak-

er.[9] In order to meet those goals, Congress left it to the district court judges to expedite these cases as much as practicable. Where giving those cases priority nevertheless failed to ensure timely disposition, the judges were given leeway to enlist the help of special masters.

Rule 920–2 achieves these goals in a manner compatible with Congress' intent as expressed in the legislative history. In 1985 in the Atlanta and Newnan divisions of the Northern District of Georgia, the average time to disposition of a Title VII case was 8.8 months. Under Rule 920–2 in 1986, that time has nearly been cut in half to 4.7 months. Thus, expediency has been enhanced.

That the United States Magistrates to whom these cases have been referred are sufficient guarantors of due process is indisputable. *See generally,* C. Seron, The Roles of Magistrates; Nine Case Studies (Federal Judicial Center 1985); C. Seron, The Roles of Magistrates in Federal District Court (Federal Judicial Center 1983).

Certainly Congress' trepidations that random special masters might not develop the expertise necessary to handle these cases are alleviated by the continuity of assigning Title VII matters to the magistrates in the relevant divisions of this district. Where the action involves issues that are unique, novel or where consideration by the district court judge would otherwise be in the public interest, Rule 920–2 flexibly provides for district court participation. Rule 920–2(b).

As noted earlier, the magistrates to whom the cases are referred follow the instructions of Rule 53(e)(2) in filing a report of their findings to the court. Fed.R. Civ.P. 53(e)(2). The court then reviews the magistrate's findings of fact under a clearly erroneous standard and scrutinizes the law on a *de novo* basis. Rule 53(e)(2) provides that the court may modify the report, reject it in whole or in part, may receive further evidence or resubmit it with further instructions. Fed.R.Civ.P. 53(e)(2). Thus, the district judge retains responsibility over the outcome of every Title VII case.

### C. *Case Discussion*

Several Circuits have considered provisions that refer some or all Title VII cases to magistrates serving as special masters. However, no court has ruled on an internal operating procedure which refers cases to magistrates in fewer than all the divisions of a district based on the factual finding that those divisions are not capable of complying with the statutory time limit for setting such matters for trial.

The Seventh Circuit, in *Flowers v. Crouch-Walker Corporation,* 507 F.2d 1378 (7th Cir.1974), considered the local magistrate's rule of the Northern District of Illinois which directed the clerk of court to automatically assign all Title VII actions to the magistrates. Under the local rules of the court in that case, the clerk assigned the action to a magistrate who conducted the pretrial proceedings, supervised discovery and received status reports. When discovery was largely completed, the clerk assigned the case to the district court judge. Two weeks later, the district court judge referred the case back to the magistrate to hold further conferences and prepare a final pre-trial order. When the pre-trial order was completed the magistrate returned the case to the judge. At that time, the district judge referred the case back to the magistrate for trial. The Seventh Circuit invalidated the local rule because its provision for assignment of cases to a magistrate by a clerk was inconsistent with 42 U.S.C. § 2000e–5(f)(4) and (5), which called for assignments to be made by

---

**9.** Another conclusion to be drawn from the legislative history is that Congress expressed no strong preference for an Article III judge to hear Title VII trials. The relevant committees of both houses of Congress originally reported bills that would have left enforcement to the EEOC. The Senate did reject this enforcement mechanism in a compromise, but placed no special importance on the *district* judge in providing for referral to a special master under Rule 53. Under Rule 53, the court can appoint anyone, usually an attorney, to hear and report on the case. However, appointment of United States Magistrates to serve as masters seems to enhance the prospects for due process guarantees relative to designation of potentially inexpert non-judicial masters.

a judge. The decision does not deal with limitations on the power of judges to make such assignments. *Id. See White v. General Services Administration,* 652 F.2d 913 (9th Cir.1981).

In the case of the rule at issue here, the method of assignment, as in all Northern District cases, is that when a Title VII complaint is filed the clerk immediately assigns the case to a particular district judge.[10] Unlike the facts in *Flowers,* the Northern District clerk's duty is a purely ministerial one with no discretion to abrogate from the method of assignment approved by the judges. Pursuant to both the finding in this court's April 17, 1986 order that the judges of the Atlanta and Newnan divisions are incapable of scheduling the case for hearing within 120 days and Rule 920–2, the case is then referred to a magistrate for disposition. Thus, the procedure does not run afoul of the paragraphs 5(f)(4) or (5) because referral to the magistrate is pursuant to a specific finding signed by each of the individual district judges. Moreover, procedure 920–2 is limited to the facts where applicable; that is to say it is in effect only in the Atlanta and Newnan divisions as long as the backlog of cases prohibits compliance by district court with the 120 day time restriction set by § 2000e–5(f).

In *Hill v. Duriron Co., Inc.,* 656 F.2d 1208 (6th Cir.1981), the Sixth Circuit stated in dicta that Title VII cases "are not to be referred indiscriminately for trial before masters. These important cases are to be heard by a judge except where there is a determination on the record that *conditions set forth in § 2000e–5(f)(5) have not been met." Id.* at 1215. (emphasis added). In that case no such factual finding was made and referral was made prior to the expiration of the 120 time period.

Plaintiff would have this court read *Hill* as requiring Rule 920–2 to be set aside. However, the court has found that in Atlanta and Newnan divisions the "conditions

set forth in § 2000e–5(f)(5) have not been met." Given the current caseload, the district judges in these divisions cannot schedule hearings on these cases within 120 days of the issues having been joined. Thus, *Hill v. Duriron* is not contrary to Rule 920–2. *See also Brown v. Wesley's Quaker Maid, Inc.,* 771 F.2d 952, 954–55 (6th Cir.1985) (for a clearer statement of the holding in *Hill* ). To hold otherwise would mean that the district judges of these divisions must once more either mechanically hold these cases on their dockets, expediting them as much as possible, and then upon the inevitable finding based on the current caseload that the particular case cannot be set for trial within the statutory time limit, haphazardly refer them to the first available magistrate. Or, the courts must needlessly pass the case back and forth between judge and magistrate until disposition is reached.

As this court has found as a matter of fact that referral is inevitable given the current caseloads in these two divisions, the procedure suggested by plaintiff's reading of *Hill* seems unnecessarily formalistic and counterproductive to the goals set forth by Congress in enacting the Title VII enforcement mechanism.

Reading § 2000e–5(f)(5) not to permit immediate referral of Title VII actions would create only bureaucratic inefficiency and delay without any commensurate benefit in fairness to the parties or expediency of resolution. Currently, under the Magistrates Act, 28 U.S.C. § 636(b)(1), there is no question that any district judge, once initially assigned a Title VII case, may designate a magistrate to hear and determine any pretrial matter pending before the court with the exception of several motions listed in § 636(b)(1)(A). Additionally, for any motion excepted in § 636(b)(1)(A) the magistrate may conduct a hearing and submit to the district judge proposed findings of fact and recommendations for disposi-

---

**10.** This method of assignment which is achieved neutrally by random numerical rotation was adopted in Internal Operating Procedure 905 to avoid all potential of or appearances of discretion in assigning particular cases to particular judges. Rule 905, Internal Operating Procedures. *See* C. Seron, The Roles of Magistrates; Nine Case Studies at 49 (Federal Judicial Center 1985).

tion of those motions.[11] 28 U.S.C. § 636(b)(1)(A) and (B). Thus, the court can refer any Title VII pretrial matter to the magistrate for appropriate treatment.

Without Rule 920–2, Internal Operating Procedures, a magistrate upon completion of discovery and other pretrial matters would refer the case back to the district court for trial. At that point the district court in a district where the caseload does not permit scheduling trial within 120 days after the issue has been joined, would refer the case back to the magistrate for trial under Rule 53. Given the factual finding that (1) the Atlanta and Newnan district judges, in spite of expediting Title VII cases, were unable to facilitate scheduling them for trial within the statutory time frame, and (2) the caseload and numbers of filings in the Atlanta and Newnan divisions has not decreased significantly since the time of that finding, it seems the only thing nullifying Rule 920–2 would accomplish would be to forbid the district courts to do in one step what could otherwise be accomplished in three steps. It is hard to imagine that Congress intended this result.

### III. Challenge to Rule 920–2 Under the Magistrates Act

Plaintiff contends that the Magistrates Act, 28 U.S.C. § 636 does not confer jurisdiction on the United States Magistrates to try Title VII cases absent the consent of the parties.[12] In support, plaintiff cites the recent Eleventh Circuit decision in *Hall v. Sharpe*, 812 F.2d 644 (11th Cir.1987). Plaintiff's reliance on this argument and on this case is misplaced.

The instant case was referred to the United States Magistrate through the authority of § 2000e–5(f)(5) under Rule 53, Fed.R.Civ.P. The district judge may refer a Title VII action to a magistrate acting as a master, even though no exceptional condition exists and the parties have not consented, if the case cannot be set for trial within 120 days after the issue has been joined. *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952 (6th Cir.1985). The review of the magistrates findings in this kind of referral is under the "clearly erroneous" standard, because the reference is made under Rule 53, the only difference being that neither consent of the parties nor showing of exceptional condition is required. *Id.* at 955; *Day v. Wayne County Board of Auditors*, 749 F.2d 1199, 1201–02 (6th Cir.1984).

The Sixth Circuit analyzed the many statutes and civil rules that provide for potential references by district judges to magistrates. *Brown v. Wesley's Quaker Maid, supra*, at 954–955. The discussion in that case makes clear that the ground rules and standards of review for cases referred under Rule 53 are separate and distinct from those referred under § 636 of the Magistrates Act. *Id.* at 954.

Plaintiff relies on *Hall v. Sharpe, supra*. However, that case dealt with a referral for trial under the Magistrates Act, not Rule 53, Fed.R.Civ.P. In addition, *Hall* dealt with a jury trial context. Thus, its holding is inapplicable here.

Plaintiff also relies on *Hill v. Duriron Co., Inc.*, 656 F.2d 1208 (6th Cir.1981) for the same proposition. However, *Hill v. Duriron* is inapplicable because it too deals in large part with referrals under the Magistrates Act. Regardless, the later pronouncement of the Sixth Circuit in *Brown v. Wesley's Quaker Maid, supra* clarifies and explains the limits of the holding in *Hill v. Duriron* with regard to the lack of interplay between the Magistrates Act and Rule 53 as embodied in § 2000e–5(f)(5).[13]

---

**11.** The magistrate may submit a report and recommendation to the judge on a dispositive motion with or without the necessity of an evidentiary hearing.

**12.** The instant case involves no ancillary claims under 42 U.S.C. § 1983 because this action was brought against the heads of federal agencies. Therefore, this case does not involve a challenge to the provision of Rule 920–2(a) which allows

referral of additional causes of action to a magistrate when the parties do not consent to trial under 28 U.S.C. § 636(c).

**13.** The only holding of *Hill v. Duriron* relevant to consideration of this case is that referral under § 2000e–5(f)(5) should be made only where there is a determination that the conditions set forth in that statute have not been met. *Hill v. Duriron supra* at 1215.

Thus, Rule 920–2, Internal Operating Procedures of the Northern District of Georgia is not in conflict with the provisions of the Magistrates Act.

## CONCLUSION

The court feels that the portions of Rule 920–2 challenged by plaintiff are in compliance with the statutory requirements of the Equal Employment Opportunity Act, and the Magistrate's Act, as well as Rule 53 of the Federal Rules of Civil Procedure. The court DENIES plaintiff's motion to set aside Rule 920–2, Internal Operating Procedures.