**Laura ADDISON,**

v.

**GWINNETT COUNTY.**

**Civil No. 1:94–cv–1154–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 10, 1995.

Robert C.D. McDonald, Leslie Elizabeth Stewart, McDonald & Stewart, Norcross, GA, for Plaintiff.

John Edgar Underwood, William J. Linkous, III, Caryl B. Sumner, Gwinnett County Law Department, Lawrenceville, GA, for Defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This civil rights action under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to 2000e–17 ("Title VII"), is before the court on Plaintiff's objections to the Report and Recommendation issued by the Magistrate Judge. Plaintiff also objects to the Magistrate Judge's denial of Plaintiff's second Motion to Compel. Because the court believes it can render a decision in this case based on the record and briefs submitted by the parties, the court denies Plaintiff's motion for oral argument.

### I. Findings of Fact

Plaintiff Laura Addison ("Addison") was hired on June 3, 1991 by Defendant Gwinnett County, Georgia ("the County") as a clerk in the Animal Control Unit. Written performance evaluations given to and signed by

Addison dated August 27, 1991 and October 21, 1991 included numerous complaints about Addison's job performance. Prior to the execution of the first performance evaluation, however, Addison maintains that she questioned her supervisors regarding the improper treatment of animals and the Animal Control Unit's failure to follow procedure. Her suggestions were treated as unwelcome by the supervisory staff.

In October, 1991, Addison complained to her supervisors, Esther Coleman and Larry Merck, that she was being sexually harassed by the minimum security prisoners the County employed to perform custodial services in the Animal Control Unit. This harassment primarily took the form of obscene comments and sexually-oriented remarks. The inmate about whom Addison complained most was admonished and instructed to stay away from her, and she was not sexually harassed after that point. The County contends and has documented through affidavits that Addison voluntarily initiated friendly contacts with inmate laborers in violation of county rules, although Addison alleges she was not aware of these rules and that they were not enforced in any event. Addison also alleges that her supervisors scrutinized her work more closely after she complained of the inmates' behavior.

On February 2, 1992, Addison reviewed and signed a third performance evaluation that detailed significant problems in her job performance and recommended that she be terminated. Among the problems cited in the evaluation by supervisor Merck included inability to perform the duties of an Animal Control Clerk, failure to retain information, failure or refusal to learn the full scope of duties required by the job, forgetfulness, lack of motivation, idleness during work hours, and poor productivity. In a meeting during the first two weeks of February, 1992 that was taped secretly by Addison, Addison was told that her work was deficient, that her termination was recommended to the County, and that she had the option of resigning.

Shortly after this meeting, Addison's father drew up a list of twenty-five accusations against the Animal Control Unit based upon what Addison had told him. Some of the allegations related to the mistreatment of animals and sexual harassment by inmates. Most allegations were complaints about Ms. Addison's supervisors' conduct and unfair treatment of her. Addison's father gave the list to the Chair of the Gwinnett Board of Commissioners and the County Manger who assured Mr. Addison that the allegations would be thoroughly investigated by the County.[1]

Although Addison initially resigned her employment with the County after the meeting with her supervisors, the Assistant Director of the Department of Public Safety, Michael Buice, urged her to withdraw her resignation. Addison agreed and was placed on paid administrative leave prior to being transferred to the Department of Public Safety in order to provide a more comfortable atmosphere for her that was free from the threat of retaliation. The County hoped Addison's employment performance would improve in her new job since it involved new supervisors and a new location.

Addison alleges that in addition to her father's list of allegations, she made an internal verbal complaint to Investigator Thompson of the Office of Professional Standards concerning inhumane treatment of animals, failure of the Animal Control Unit to follow procedures, sexual harassment by inmates, and unfair criticism of her work performance. Gwinnett maintains that any such oral complaints were made in an interview of her conducted during the investigation of her father's allegations. Addison has produced nothing to contradict the County's assertion that this meeting was confidential. The County also interviewed numerous other witnesses in its investigation before issuing a report that partially sustained three of Addison's father's twenty-five allegations. The report further concluded, however, that numerous witnesses, including those supportive of Ms. Addison, stated that her job perfor-

---

1. The Chair of the Gwinnett Board of Commissioners and the County Manager have since changed.

mance was lacking in significant areas. As a result of the report, supervisor Coleman at Animal Control was suspended for one day from work and was given a reprimand.

The County also commissioned a report on the management practices of the Animal Control Unit which was available internally on November 20, 1992, and publicly on February 1, 1993. The report noted problems mostly related to insufficient personnel to adequately staff the facility. An article about the report appeared in "Gwinnett Extra" section of the Atlanta Journal/Constitution on February 2, 1993.

On approximately April 27, 1992, the final performance evaluation relating to Addison's tenure in the Animal Control Unit was released, documenting serious problems in job performance and attendance and culminating in a rating of an unacceptable 1.52 out of a possible 4.0. This document was unsigned by Addison and released after the investigation began into the Animal Control Unit.

During her three months with the Department of Public Safety, Addison's supervisor, Shirley Adams, believed that Addison could not perform her job duties adequately and spent a large amount of time telling people about the events at Animal Control. This opinion was shared by Lt. Bruno, Major Harper, and Dianne Powell, all of whom observed Addison's work.

Adams rated Addison's job performance as an unacceptable 1.0 out of a possible 4.0, noting that Addison was inefficient, lacked confidence in her performance of tasks, was unable to retain instructions, lacked essential skills, made errors, and failed to seek work. This performance review was unsigned by either Adams or Addison, but Adams has confirmed that she executed the document. The director of the department extended Addison's probationary period for an additional six months in order to give her time to improve her performance.

In June of 1992, the County transferred Addison to the Department of Administrative Services, located in a different building. Her

immediate supervisor, Elvira Rogers, reported to the department's director, Winford Gower. Rogers evaluated Addison's job performance for her first few months at the department as good, and ranked her as an "acceptable" 2.75 points out of a total of 4 points. The evaluation was unsigned by either Rogers or Addison, but Rogers has confirmed that she executed the document.

In August 1992, Rogers gave Addison a memorandum regarding Addison's voluntary contact with inmate labor. Addison had initiated contact with an inmate notwithstanding the instruction that had been given to her prohibiting conversations with inmates.[2] This memorandum was later withdrawn from Addison's file in order to give her a fresh start. Addison admits to initiating contact with two inmates.

Following Rogers' departure from the Department of Administrative Services, Addison was supervised directly by Gower for approximately two months. Addison next was supervised by Ellen Keys until Keys' departure from the department and Gower's retirement. Gower, Keys and other employees in the department observed serious deficiencies in Addison's performance. Gower observed Addison staring into space for lengthy periods of time, taking an extremely long time to complete routine tasks, and doing unnecessary tasks. Gower also believed that Addison caused a low morale in the office because others were forced to make up for her poor work volume and because she had a bad attitude.

Keys issued a performance evaluation rating Addison an unacceptable 1.4 out of a possible 4 points. Keys believed that Addison was unable to perform complex tasks, had poor concentration, and was disorganized. Keys also found Addison to be defensive, confrontational towards fellow workers, and unable to accept blame for her shortcomings. This evaluation was not signed by either Keys or Addison, but Keys confirmed in affidavit testimony that she executed the document.

---

**2.** Although Addison disputes that she was informed of this policy during her tenure at Animal Control, she apparently does not dispute that she knew of the policy while at the Department of Administrative Services.

Addison claims that she was harassed by inmates employed by the County throughout her time at the Department of Administrative Services. When Addison complained to her superior that inmates stared at her through the glass from the hallway area outside her office, the blinds were closed for several months. When Addison complained that she did not like inmate crews cleaning her office while she was there, her supervisors ensured that the crews were brought in to clean the offices prior to the time Addison reported for work. Inmate supervisors were also instructed to keep careful watch on inmates whenever Addison was around. After October 1992, Addison no longer experienced harassment.

On February 1, 1993, Peter Pekich became Acting Director of the Department of Administrative Services after Gower's retirement. His appointment was temporary, lasting only until March 15, 1993. Pekich acted as Addison's supervisor. He testified that his knowledge of Addison's problems with inmates was limited in that he only had a vague account from Gower that Addison had experienced some problems with inmates and some statements by Addison herself.

Pekich contends that his knowledge of Addison's history with the Animal Control Unit was even more limited, and arose from newspaper articles and Addison's statements to him. He alleges that he had no knowledge of Addison's written allegations until she brought the investigation to his attention. Pekich has stated that at the time Addison was terminated he had no knowledge of the content or substance of any written allegations or statements that Addison may have made to Animal Control. He also has stated that she talked frequently about the events at Animal Control.

Pekich made the decision to terminate Addison's employment with the County on March 5, 1993 because of her poor employment performance, including unacceptable attendance, inability to co-exist with workers in the department, and poor workplace judgment. In reaching this decision, Pekich reviewed Addison's employment file with Keys. The file contained seven employment reviews written about Addison from the time of her employment at Animal Control. Six of the seven reviews rated Addison as unacceptable, with only one finding her performance adequate. Pekich also attended two meetings at the Gwinnett County Law Department with a number of other individuals, including Dr. Sampson, Plaintiff's psychologist, to discuss Addison's job performance. Pekich concluded no improvement in Addison's performance was likely, and terminated her.

Addison filed suit alleging retaliatory discharge by the County. United States Magistrate Judge Gerrilyn G. Brill has recommended that the County be granted summary judgment on all claims, primarily on the grounds that Addison failed to prove a causal link between her firing and her complaints about Animal Control and sexual harassment by inmates. Addison objects to the Magistrate Judge's findings. Also before the court is Addison's objection to an earlier order by the Magistrate Judge denying her second Motion to Compel.

■ As an initial matter, Addison objects to the referral of this case to the Magistrate Judge under Internal Operating Procedure 920–2. It is clear, however, that federal courts have the inherent power to appoint individuals to aid judges in the performance of their duties, with or without the consent of the parties. *Kinney v. Motion Indus., Inc.*, No. 94–1317 (N.D.Ga.1995); *Ex parte Peterson*, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920). 28 U.S.C. § 636(b)(1)(B) explicitly authorizes a judge to designate a magistrate judge to "hear and determine any pretrial matter pending before the court," including a motion for summary judgment. In addition, Rule 920–2 has been found constitutional and expressly authorized under the law. *Parker v. Dole*, 668 F.Supp. 1563 (N.D.Ga.1987). As such, the referral of this case to a magistrate judge was well within the discretion and authority of this court, and Plaintiff's objections to the contrary are overruled.

## II. Plaintiff's Second Motion to Compel

■ On December 8, 1994, Plaintiff filed a Motion to Compel Testimony, Answers to Interrogatories, Production of Documents,

and Answers to Requests to Admit from Defendants. United States Magistrate Judge John E. Dougherty denied Plaintiff's Motion to Compel in its entirety. On April 10, 1995, this court overruled all of Plaintiff's objections except for one, and remanded to determine if a physician-patient relationship existed between Addison and Dr. Sampson.[3] This court directed that if a relationship did exist, Addison should be allowed "discovery of what was discussed during the meetings Dr. Sampson attended" in the Gwinnett County Law Department.

On remand, the Defendant expressly stipulated in a telephone conference with the Magistrate Judge that Addison had a valid physician-patient relationship with Dr. Sampson. The Magistrate Judge then requested counsel to submit a consensual discovery order to the court dealing with any outstanding issues. Because the parties could not agree on the scope of discovery, however, the Magistrate Judge directed each party to individually submit a proposed order. While the Defendant complied, the Plaintiff did not but subsequently advised the Court that there were no objections to the Defendant's proposal. The Magistrate Judge issued an order substantially verbatim to that proposed by the Defendant containing the following paragraph: "Additional depositions of Mr. Winford Gower, Mr. Peter Pekich, and Dr. Sampson may be scheduled by the parties for the limited purpose of discovery of what was said and what was done at the above referenced meetings."

In the notices of deposition sent to Mr. Gower and Mr. Pekich, Plaintiff included requests for production of documents related to the meetings in which Dr. Sampson was present to be produced at the depositions. The request was as follows:

1. All documents reviewed by the witnesses in preparation for their depositions, or which may assist the witnesses in their testimony;

2. All documents reviewed or discussed during any meetings at the Gwinnett Justice Center at which Dr. Sampson and the deponent were present; and

3. Each deponent's original calendar for January, February and March of 1993.

The County opposed the production of such documents on the grounds that neither the order of this court nor that of the Magistrate Judge had required further document production. Plaintiff subsequently filed a Motion to Compel.

Addison also objected to defense counsel's instruction to the deponents not to answer questions concerning events outside the scope of the meetings at which Dr. Sampson was present. The Magistrate Judge requested Plaintiff's counsel to submit the specific questions to which the objections were made and their context. Instead, Plaintiff's counsel submitted an "amalgam" of questions to which she desired to compel answers.

In an order dated June 15, 1995, the Magistrate Judge held that the court's discovery order did not allow for document production and that any further discovery would be moot in light of Defendant's assertion that it previously had turned over any relevant documents in issue. The court found that additional discovery would be futile in light of the deposition testimony already acquired by the parties. The Magistrate Judge also denied Plaintiff's Motion to Compel deposition testimony because the court found no evidence that defense counsel improperly restricted the answer of the witnesses and because Plaintiff failed to submit specific questions to which she desired answers. Addison objects to the Magistrate Judge's Order.

Under 28 U.S.C. § 636(b)(1)(A), this court may reconsider a magistrate judge's order on a pretrial matter where the order is clearly erroneous or contrary to the law. Using this standard, the court affirms the Magistrate Judge's determination and Plaintiff's Motion to Compel is therefore denied. Plaintiff's request for sanctions is likewise denied. A review of the deposition testimony in question reveals that defense counsel did not improperly restrict the witnesses' responses, nor was there a point at which Addison was prevented from discovering proper testimony. Addison agreed to be bound by the

---

**3.** This action initially was assigned to Magistrate Judge Dougherty. At this point in the proceedings, the case was assigned to Magistrate Judge Gerrilyn G. Brill.

Defendant's proposed consent order which clearly limited discovery to what was said and done in the meetings in question. Similarly, Plaintiff is not entitled to compel documents associated with the meetings in question because the discovery order was plainly limited to deposition testimony, not document production. As such, if Addison desired these documents, she should have requested document production as a component of the discovery order issued by the Magistrate Judge.

### III. Plaintiff's Objection to the Magistrate Judge's Report and Recommendation

█ When a party files timely and specific objections to findings of fact made by a magistrate judge, the court is obligated to conduct a de novo review of the record regarding that issue. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.1988), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). As such, the court independently reviews the facts of this case.

█ The court will grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 254, 106 S.Ct. 2505, 2510, 2513, 91 L.Ed.2d 202 (1986). Under Fed.R.Civ.P. 56(c), summary judgment is mandated against a party who, after adequate discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). While the evidence and factual inferences are to be viewed in a light most favorable to the non-moving party, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987), the non-moving party is required to do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A. Section 1983

█ In Addison's first cause of action under 42 U.S.C. § 1983, she alleges that the County unlawfully terminated her for exercising her First Amendment right to freedom of speech. To prevail on this claim, a plaintiff must show: 1) the expression addressed a matter of public concern; 2) the employee's First Amendment interests outweigh the interests of the employer in preserving the efficiency of government services; and 3) the employee's speech was a substantial or motivating factor in government's discharge decision. *Bryson v. Waycross*, 888 F.2d 1562, 1565–66 (11th Cir.1989); *Martinez v. Opa–Locka*, 971 F.2d 708, 712 (11th Cir.1992). Once the plaintiff establishes these elements, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have reached the same decision "even in the absence of the protected conduct." *Bryson*, 888 F.2d at 1566 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). Ordinarily, this is a question for the jury. *Barnard v. Jackson County*, 43 F.3d 1218, 1226 (8th Cir.1995).

█ The Magistrate Judge concluded that Addison failed to establish that her complaints about the Animal Control Unit were a substantial or motivating factor in the County's decision to discharge her.[4] The court agrees with the Magistrate Judge's holding on causation and therefore finds it unnecessary to consider the first two prongs of the *Mt. Healthy* test.

The court finds that there is insufficient evidence in this case from which a jury could conclude that Pekich had knowledge of Addison's protected speech about the Animal Control Unit. It is undisputed that Pekich was aware that Addison was dissatisfied with the management of Animal Control and had experienced problems with her supervisors there. This is not sufficient to prove, however, that Pekich was aware that Addison had lodged formal complaints with county offi-

---

**4.** The Magistrate Judge did not consider Plaintiff's allegations regarding sexual harassment as part of her § 1983 claim because Addison did not include this allegation in her amended complaint. Plaintiff has not objected to this determination, and the court therefore declines to consider the matter.

cials resulting in a public investigation into the Unit.

Addison has produced no evidence showing that Pekich knew about the allegations submitted by Addison's father or those she made in her meeting with Investigator Thompson. The newspaper articles she gave to Pekich did not identify her in any way, and Addison's response that it would not be hard to guess who made the allegations does not contradict Pekich's assertion that he did not. Addison's contention that Pekich read the investigative report and therefore must have known of her allegations is similarly flawed. Even if Pekich said to Addison that he was not finished reading the report, this statement does not contradict Pekich's contention that in actuality he never did read it. Finally, Pekich's knowledge cannot be inferred from the existence of the February 17, 1993 letter addressed to Keys which notes that Addison has made formal complaints about Animal Control. There is no evidence before the court contradicting Pekich's statements that he did not see the letter and that it was not included in Addison's employment file.

■ A plaintiff cannot show that her exercise of protected activity was a substantial or motivating factor in her termination where she has no evidence that her employer was actually aware of her activity. *See, e.g., McCollum v. Bolger,* 794 F.2d 602, 610–611 (11th Cir.1986), *cert. denied, McCollum v. Tisch,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1370 (7th Cir. 1993). As such, Pekich's lack of knowledge negates Addison's cause of action under the First Amendment and § 1983. *Id.*

Even if Pekich was aware that Addison had made public complaints concerning Animal Control, however, there is no evidence indicating that Pekich terminated her for any reason connected with this knowledge. Contrary to Addison's objection, the Magistrate Judge correctly concluded that the timing of Addison's complaints and her discharge argues in favor of the defense and supports the inference that neither the County nor Pekich had a motive to retaliate against her. Because Addison's complaints were fully known and investigated several months prior to her termination, any motivation to fire her in order to "sweep under the rug" her allegations had long since passed. Addison's information on the operations at Animal Control arose during her employment with that Unit ending in February, 1992. Since she has had no contact with Animal Control since her complaints were aired and she was transferred, she could have no new information to reveal to anyone that was not already widely known. As such, there was no motivation for the County to fire Addison in retaliation for these events at the point at which it terminated her.

Addison's response that the County fired her in order to silence her in the future makes little sense as nothing prevented Addison from speaking out once she left the County's employ. Addison has failed, moreover, to offer evidence showing that the County attempted to stifle her speech at any time. In contrast, Addison's own evidence demonstrates that the County encouraged her speech by interviewing her and her father regarding their allegations and welcoming follow-up information. (Plaintiff's Aff., ¶¶ 67, 79). The County fully investigated the Animal Control Unit as a result of Addison's allegations on two separate occasions, indicating that it did not attempt to suppress her complaints.

■ A discharged employee cannot resist summary judgment simply by asserting that the speech in question caused her to be discharged. *See Barnard,* 43 F.3d at 1226. As one court held, "[a]t some point, the speech becomes so remote in time to the discharge that a court may rule as a matter of law that even if such speech enjoys First Amendment protection, it played no role in the employee's termination." *Id. See also O'Connor,* 985 F.2d at 1368 ("the mere fact that protected speech precedes an employment decision does not create an inference that the speech motivated the employment decision").

Addison's objection to the Magistrate Judge's finding that Pekich had no motive to terminate her for her complaints concerning Animal Control is without merit. Pekich, as Director of the Department of Administra-

tive Services, had no hierarchical connection to Animal Control. Nothing revealed in the investigation of that Unit's affairs could embarrass or negatively reflect upon his position. It seems that Pekich's only interest in Animal Control was the fact that Addison spent a large portion of her work day discussing it.[5] Although Addison repeatedly points to the two meetings held at the Gwinnett County Law Department as evidence that the County was motivated to terminate her because of her complaints about Animal Control, she has offered no evidence supporting this assertion. In contrast, Dr. Sampson, who considered himself Addison's advocate at the meetings, has stated that the "universal purpose" of those attending the first meeting was to "maintain her employment; they wanted to help her." (Sampson Depo. II p. 70–71, 77). He further stated that the second meeting involved nothing "detrimental to her" and instead was intended to "help Laura." (Sampson Depo. II p. 75–76).

In short, the number of actions taken by the County and by Pekich to accommodate Addison, including investigating her complaints, transferring her to two different departments unrelated to and in different locations than Animal Control, extending her probation, and listening to her concerns indicate that Addison's supervisors were determined that she succeed in her employment if at all possible rather than that she be punished for her allegations. Although the court acknowledges that there may rarely be direct evidence of improper motivation, Addison nevertheless has failed to produce any evidence from which such an inference could be drawn.

The six employment reports and affidavits by Addison's supervisors and co-workers stating that she was incompetent, on the other hand, provide forceful evidence that the basis for Addison's termination is that claimed by the County. Although Addison offers her own denials of poor performance and points to one employment evaluation by Ms. Rogers stating that her performance was "acceptable," this does not create a genuine dispute as to whether Pekich believed there was overwhelming evidence of incompetence justifying her termination. Pekich believed the reports to be valid, and Pekich made the decision to terminate Addison.

▮▮▮ Summary judgment is appropriate in a § 1983 case alleging improper termination when the plaintiff fails to set forth specific facts sufficient to raise a genuine issue of material fact as to whether her speech was a substantial or motivating factor in ending her employment.[6] *See O'Connor*, 985 F.2d at 1368–71; *Hughes v. Bedsole*, 48 F.3d 1376, 1385–86 (4th Cir.1995); *and Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992). A reasonable juror faced with the undisputed facts in this case could only infer that because the speech preceded Addison's termination, it must have motivated the termination. This inference is not sufficient as a matter of law to withstand summary judgment. *See O'Connor*, 985 F.2d at 1370. The uncontroverted testimony in this case indicates that there is no genuine issue of fact to be resolved. As such, the court adopts the recommendation of the Magistrate Judge as to Count I, grants the defendant's motion for summary judgment as to this claim, and overrules Plaintiff's objections.

### B. Title VII

▮▮▮ In her second cause of action, Addison alleges that the County terminated

---

5. As the Magistrate Judge correctly noted, while there is no evidence that Addison's daily complaining sessions motivated her termination, the County could have considered this aspect of her employment without running afoul of either the Constitution or § 1983. *See, e.g., Bryson*, 888 F.2d at 1567 (police officer's constant complaints while on duty were not protected speech).

6. Plaintiff has confused the standard of causation she must establish to withstand summary judgment in her § 1983 case with that necessary to withstand summary judgment in her Title VII

retaliatory discharge claim. The *Mt. Healthy* analysis in cases involving retaliation for exercising free speech rights requires that the plaintiff establish that the protected speech was a "substantial or motivating factor" in the employee's termination. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. In Title VII, the standard is broader and requires only that the plaintiff prove that the protected expression and the termination were not "wholly unrelated." *Hughes v. Bedsole*, 48 F.3d 1376, 1387 (4th Cir.1995).

her in retaliation for her complaints about sexual harassment by inmate laborers in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. To establish a prima facie case of retaliation under Title VII, the plaintiff must show that she "exercised her protected rights, an adverse employment action occurred, and the adverse action was causally related to the plaintiff's protected activities." *EEOC v. Reichhold Chems., Inc.,* 988 F.2d 1564, 1571 (11th Cir.1993). Causation is liberally construed in favor of the plaintiff such that she need only prove that the "protected activity and the negative employment action are not completely unrelated." *Id.* at 1571–72. If the plaintiff satisfies this standard, the burden of production shifts to the defendant to show that the plaintiff's discharge was non-retaliatory. *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494–95 (11th Cir.1989). The plaintiff can still succeed in her cause of action by showing that the defendant's proffered reason is a pretext. *Id.* At all times the plaintiff retains the burden of persuasion. *Id.*

■ The Magistrate Judge found that Addison could not show causation and granted summary judgment for the County. The court agrees with Magistrate Judge Brill's well-reasoned conclusion.[7] Addison objects to Magistrate Judge's belief that the timing of her dismissal in relation to her complaints does not create an inference of retaliation. As Plaintiff recognizes, if a person with knowledge of the employee's complaints takes adverse action against that employee shortly after the protected activity occurs, a jury could infer that a causal relationship existed between the protected activity and the adverse action. *See, e.g., Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913 (11th Cir.1993). The fact that an adverse employment decision followed protected activity is insufficient in itself, however, to establish a causal connection. *Nyasuma v. Donley,* 843 F.Supp. 1456, 1459 (M.D.Ga.1994).

■ Addison admits that harassment by inmates ceased as of October, 1992, well before her termination in March, 1993. Addison's complaints of sexual harassment also ended before Pekich began working at the Department of Administrative Services, indicating that Pekich had no motive for retaliating in response to these complaints. As the Magistrate Judge noted, complaints about earlier inmate conduct would not have reflected poorly on Pekich's position. Lack of a motive for retaliation may properly be considered as a factor in determining whether the plaintiff has met her burden of proof. *See Bailey v. USX Corp.,* 850 F.2d 1506, 1508 (11th Cir.1988). In light of these circumstances, any inference to be drawn from the timing of Addison's discharge supports the County's claim that the events were unrelated.

■ Nevertheless, the court may infer a causal connection in the absence of temporal proximity where there is substantial other evidence indicating such a connection. *See, e.g., Robinson v. Southeastern Pa. Transp. Auth.,* 982 F.2d 892 (3rd Cir.1993). To date, Addison has revealed no evidence sufficient to meet even the minimal "wholly unrelated" standard. As the Magistrate Judge pointed out, during the three months Addison worked for the Department of Public Safety she made no complaint concerning harassment by inmates and still received negative performance reviews. Both her immediate supervisor and several co-workers testified extensively to her lack of competence.

With respect to the County, the record is replete with evidence of the County's attempts to deal with its supervision problems and to make Addison feel comfortable rather than indicating a motive to retaliate against her. When Addison complained that inmates stared at her through the hall windows, the County allowed her to dial the blinds shut. When she complained that the inmates who cleaned her office made her uncomfortable,

---

7. The defense argues that Plaintiff has failed to object to the Magistrate Judge's recommendation on the Title VII motion and thus has waived her right to de novo review. The court agrees that Plaintiff's objections on this cause of action are interspersed with her discussion of the § 1983 action rather than being individually set out in reference to Title VII. Because her objections, while not precise, sufficiently detail her disagreement with the Magistrate Judge's recommendation as to the Title VII claim, the court will review this portion of the opinion.

the County forced them to clean her office before her arrival in the morning. In short, there is no evidence that the County did anything to indicate that Addison's termination was related to her complaints about sexual harassment.

In contrast, Addison's poor employment record, despite her affidavit testimony, is strong evidence that the causal link between Plaintiff's complaints and her termination is lacking. Addison's very first employment evaluation occurred at Animal Control before she complained about sexual harassment. That report is clear in detailing significant performance difficulties that reappear in later evaluations. Her lack of progress during her tenure with the County provides a convincing and uncontradicted basis justifying Pekich's decision to ultimately discharge her. The fact that Addison believes she was competent, combined with two other individuals who believed likewise, is insufficient to establish that the reasons Pekich offered for her termination are mere pretext.

The court agrees with Magistrate Judge Brill's reading of the record that none of the meetings attended by Gower, Sampson and Pekich, among others, provided any evidence of an intent to retaliate. Again, all relevant parties have repeatedly stated that the purpose of the meetings was to determine the extent of Addison's performance problems and the likelihood of improvement. Despite prolonged discovery, Addison has provided no evidence to contradict this assertion. Contrary to Addison's belief, moreover, mere knowledge by Pekich that Addison may have a potential discrimination claim against the County is insufficient in itself to show pretext because "Title VII protection from retaliation ... does not clothe the complainant with immunity for past and present inadequacies." *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir.1988), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988).

In sum, Plaintiff has provided little more than her own assertion that she is qualified and testimony from two individuals that her performance was at least adequate. She has offered no evidence to contradict Pekich's assertion that he fired Addison based on his belief that she had a long history of job inadequacy, was presently unable to do her job at the level required of her, and was unlikely to improve at any time in the future. As Magistrate Judge Brill noted, "conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions." *Carter v. Miami*, 870 F.2d 578, 585 (11th Cir.1989) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)). As such, the Magistrate Judge's recommendation is adopted, the Defendant's motion for summary judgment on Plaintiff's Title VII claim is granted, and Plaintiff's objections are overruled.

## IV. Conclusion

Accordingly, Plaintiff's Motion for Oral Argument [63–1] is DENIED. Plaintiff's second Motion to Compel and request for sanctions [63–1] are likewise DENIED. Plaintiff's objections [67–1] to the Report and Recommendation issued by the Magistrate Judge [64–1] are OVERRULED and the Defendant's Motion for Summary Judgment [24–1] is GRANTED.

SO ORDERED.